<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AL & JOHN, INC., T/A GLEN ROCK HAMS : | |
| : | Civil Action No. 08-2898 (SRC) |
| Petitioner, : | OPINION |
| : | |
| v. : | |
| : | |
| LOCAL 464A, UNITED FOOD AND : | |
| COMMERCIAL WORKERS UNION : | |
| : | |
| Respondent. : | |
| : | |

**<u>CHESLER</u>**, District Judge

      This matter comes before the Court upon the motion for summary judgment confirming the arbitrator's award filed by Respondent Local 464A, United Food and Commercial Workers Union ("Respondent" or the "Union") (Docket Entry No. 14) and the motion for summary judgment vacating the arbitrator's award filed by Petitioner Al & John, Inc., T/A Glen Rock Hams ("Petitioner" or the "Company") (Docket Entry No. 15). The motion for summary judgment confirming the arbitrator's award will be granted, and the motion for summary judgment vacating the arbitrator's award will be denied.

      In brief, the background to the instant dispute is as follows. Glen Rock Hams has been a ham manufacturer for nearly thirty years. For the past twenty-seven years, the Union has represented various employees of the Company. The Union and the Company have negotiated successive collective bargaining agreements ("CBA") since 1980, including in 2003 and 2006. Article I of the CBA, on "recognition," states, in relevant part:

> The employer hereby recognizes the Union as the sole collective bargaining agent on behalf of all its production, shipping, receiving, and such other employees performing work incidental thereto, employed by the Employer, in its plant or any and all other plants now operated or hereinafter acquired and operated during the term hereof, by the Employer, located in the State of New Jersey and/or State of New York, excluding non-working supervisors, helper employees, and such other categories as are excluded by the Labor Management Relations Act of 1947 and as amended.

At the core of the instant dispute is the issue of whether seven workers[1] at the plant were "helper employees" within the meaning of the CBA.

In 2006, various employees filed suit in this Court alleging that the Company breached the CBA by not affording these employees the benefits of the CBA. The employees also alleged that the Union breached its duty of fair representation by failing to act to remedy the alleged breach by the Company. Both Defendants, the Company and the Union, moved to dismiss the employees' claims in favor of binding arbitration, as mandated by the applicable CBA. The Court agreed and, on May 18, 2007, dismissed the action in favor of arbitration. The selected arbitrator, William DiCindio, held an evidentiary hearing on November 7, 2007. The parties stipulated as to the issue presented: "Did the Employer violate the collective bargaining agreement by misclassifying certain employees as "helpers" and, if so, what shall be the remedy?" The Arbitrator heard testimony from various employees and post-hearing briefs were submitted in January of 2008.

On March 17, 2008, the Arbitrator issued his Opinion and Award (the "Arbitrator's Award.") After reviewing the evidence, Arbitrator DiCindio held that the seven positions in

---

[1] The parties have stipulated that there are seven positions in dispute: four workers operating injector machines; one worker operating the advanced meat recovery machine; and two workers operating the Curwood machine in the packing area.

question were part of the bargaining unit and that the Company had misclassified these positions. In rendering his decision, Arbitrator DiCindio focused heavily on the language of the recognition clause in Article I, quoted above.  Specifically, Arbitrator DiCindio relied on the language that the "employer hereby recognizes the Union as the sole collective bargaining agent on behalf of all its production, shipping, receiving, and such other *employees performing work incidental thereto*."  (emphasis added).  As for the worker operating the advanced recovery machine, the Arbitrator found that such work is "incidental to the production of the end product," and, therefore, covered by the CBA.

Arbitrator DiCindio also relied on this rationale in holding that the employees operating the injector machines are part of the bargaining unit.  He found that this type of work is incidental to production and, thus, that these employees came within the scope of the CBA.

Lastly, based on the same rationale, Arbitrator DiCindio observed that the helpers of the packers performed work incidental to the packing and, thus, that these employees came within the scope of the CBA.

In United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960), the Supreme Court set forth the fundamental principles for judicial review of the decisions of labor arbitrators, pursuant to 29 U.S.C. § 185 and the Labor Management Relations Act:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem.  This is especially true when it comes to formulating remedies.  There the need is for flexibility in meeting a wide variety of situations.  The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.  Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice.  He may of course

look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

Judicial review of an arbitrator's decision is limited to the inquiry into whether or not the award draws its essence from the collective bargaining agreement:

> It is only when the arbitrator strays from interpretation and application of the agreement and effectively "dispenses his own brand of industrial justice" that his decision may be unenforceable. When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's "improvident, even silly, factfinding" does not provide a basis for a reviewing court to refuse to enforce the award.

Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (citations omitted).

Third Circuit law provides this additional guidance for the Court's determination of whether the award draws its essence from the collective bargaining agreement:

> It is [] not the role of a court to correct factual or legal errors made by an arbitrator. A district court may determine only whether or not an arbitrator's award 'draws its essence' from the parties' collective bargaining agreement, and we apply this same standard in reviewing the arbitration award. Once a court is satisfied that an arbitrator's award draws its essence from a collective bargaining agreement, it is without jurisdiction to consider the award further.
>
> An award draws its essence from a collective bargaining agreement if its interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. As a general rule, we must enforce an arbitration award if it was based on an arguable interpretation and/or application of the collective bargaining agreement, and may only vacate it if there is no support in the record for its determination or if it reflects manifest disregard of the agreement, totally unsupported by principles of contract construction.

Brentwood Med. Assocs. v. UMW, 396 F.3d 237, 240-241 (3d Cir. 2005) (citations omitted).

Thus, this Court's review of the Arbitrator's Award is limited to the determination of whether the Award draws its essence from the CBA. The Award does so. The Arbitrator's

4

decision turns on judgments that can be put into two groups. First, the Arbitrator found that workers performing work that is incidental to production are included within the scope of the plain language of the CBA. Second, the Arbitrator found, as a factual matter, that all seven of the workers at issue performed work that is incidental to production. The first point clearly draws its essence from the CBA: it is a straightforward observation of a provision in the agreement.

Petitioner's best argument points to the fact that the express language of the CBA excludes "helper employees" from its scope. This argument, however, does not do more than show that the Arbitrator might have rationally arrived at a different conclusion. The crux of the Arbitrator's decision is this: the Arbitrator examined the evidence about the work performed by the employees at issue and decided that this work fell within the inclusion language of the "incidental" provision rather than the exclusion language of the "helper employees" provision. Whether or not this Court believed that this was a correct decision or an incorrect one, it is undeniable that this reasoning draws its essence from the CBA. Under Third Circuit law, "[a]n award draws its essence from a collective bargaining agreement if its interpretation can in any rational way be derived from the agreement." Brentwood, 396 F.3d at 241. The Arbitrator's view that some work could come within the scope of the CBA by virtue of the "incidental" provision is rationally derived from the CBA. Petitioner has offered no basis for this Court to conclude otherwise.

The second group of judgments by the Arbitrator are the factual determinations about the nature of the work performed. As the Supreme Court stated, in the absence of dishonesty, even "silly" factfinding provides no basis for vacating an award. Garvey, 532 U.S. at 509. The factual

5

determinations that the workers performed work that is incidental to production, rather than acted as helpers, are not even close to being silly.  Petitioner has not alleged any dishonesty.  This Court has no basis to vacate the Arbitrator's factual determinations.

Lastly, Petitioner contends that these particular positions have historically been excluded from the CBA.  Even if true, this does not show that the Award does not draw its essence from the CBA.

Petitioner has failed to show that the Award does not draw its essence from the CBA, nor has Petitioner shown that the Arbitrator's Award reflects manifest disregard of the CBA.  This Court is satisfied that the Arbitrator's Award draws its essence from the CBA, and the Award will be confirmed.  Judgment confirming the Arbitrator's Award will be entered in Respondent's favor.

Respondent also moves for an award of attorney's fees on the ground that the losing party acted without justification.  The Third Circuit has stated: "In suits to compel one party to submit to arbitration or abide by an award, fees are generally awarded if the defaulting party acted without justification, or if the party resisting arbitration did not have a reasonable chance to prevail."  Chauffeurs, Teamsters & Helpers v. Stroehmann Bros. Co., 625 F.2d 1092, 1094 (3d Cir. 1980) (citations omitted).  Although this Court has decided against the Petitioner, this Court cannot conclude that Petitioner acted without justification in seeking to vacate the Award.  Respondent's request for attorney's fees is denied.

The Union filed a motion to strike portions of the Certification of Alan Model.  The portions at issue played no role in this Court's decision and the motion will be denied.

In conclusion, Respondent's motion for summary judgment (Docket Entry No. 14) is

**GRANTED**, and the Arbitrator's Award is confirmed, and judgment is entered in Respondent's favor. Petitioner's motion for summary judgment (Docket Entry No. 15) is **DENIED**. Respondent's motion to strike (Docket Entry No. 20) is **DENIED**.

                                                      s/ Stanley R. Chesler
                                              Stanley R. Chesler, U.S.D.J.